IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

LARRY THOMAS                          :
                                      :
        Plaintiff,                    :
                                      :
v.                                    :        CASE NO.:  7:22-CV-00112 (WLS)
                                      :
GOVERNOR'S OFFICE FOR THE             :
STATE OF GEORGIA, *et al.*,           :
                                      :
        Defendants.                   :
                                      :
_____ :

## ORDER

Before the Court are *pro se* Plaintiff Thomas's Motion to Leave to Admend [sic] Complaint (Doc. 59), Plaintiff's Second Motion to Leave to Admend [sic] Complaint (Doc. 77), and Defendants' Motions to Dismiss (Docs. 31; 32; 40; 45; 53; 57; 86; 87).

For reasons stated below, Plaintiff's Motions to Leave to Admend [sic] Complaint (Docs. 59; 77) are **DENIED**, Defendants' Motions to Dismiss (Docs. 31; 32; 40; 45; 53; 57; 86; 87) are **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.** Accordingly, all other pending Motions (Docs. 13; 66; 73) are **DISMISSED as moot**.

## RELEVANT PROCEDURAL HISTORY

On October 18, 2022, Plaintiff Thomas, proceeding *pro se*, filed a Complaint (Doc. 1) against fifty-one (51) Defendants. The following day, Plaintiff filed a Motion to Amend the Complaint. (Doc. 2). The Court denied the Motion to Amend (Doc. 2) without prejudice, in part, because the Complaint and the Amended Complaint were in shotgun form. (Doc. 7). In denying the Motion to Amend (Doc. 2) without prejudice, the Court noted that Plaintiff

will be given another opportunity to file a motion to amend if he cures the deficiencies.

(Doc. 7, at 3).

Subsequently, Plaintiff filed his First Amended Complaint (Doc. 20). Within five days thereafter, he filed four (4) additional amended complaints (Docs. 23; 26; 29; 30). The Court entered an Order (Doc. 38) instructing all Parties that the First Amended Complaint (Doc. 20) was the operative Complaint, after determining that Plaintiff had amended his Complaint once as a matter of course under Rule 15(a)(1). (Doc. 38). Additionally, the Court also struck the four subsequent Complaints. (*Id.*) The Court notified Plaintiff that he may "not continue to file amended complaints with new claims, request for relief, and new defendants, without either obtaining a written consent from Defendants or obtaining permission for leave from the Court." (Doc. 38, at 6). The Order (Doc. 38) also provided a notice to Plaintiff on submitting a response to Defendants' pending motions to dismiss.

On August 8, 2023, Plaintiff filed the instant Motion for Leave to File an Amended Complaint. (Doc. 59). Defendants filed their Responses in Opposition (Docs. 72; 74; 75). Specifically, the Defendants contend that amendment would be futile because Plaintiff's proposed Amended Complaints fail to state a claim against them and because the Amended Complaints are impermissible shotgun pleadings that contain the same deficiencies as his operative Complaint (Doc. 20). (Docs. 72; 74; 75.  To this, Plaintiff briefly contends that his amended complaint "has no defiencies [sic]." (Doc. 92).

Thereafter, on August 29, 2023, Plaintiff filed the instant Second Motion for Leave (Doc. 77). Defendants filed their Responses in Opposition (Docs. 79; 90; 95), arguing that Plaintiff's lack of attempt to cure any deficiencies demonstrates bad faith. (Doc. 90). Plaintiff

filed a belated Reply (Doc. 93), merely stating that his amended complaint now has "417 claims" and has "added 14 [additional] defendants" and that he has "no dilatory motive."

A total of eight Motions to Dismiss (Docs. 31; 32; 40; 45; 53; 57; 86; 87) have been filed by Defendants, who have been assembled into eight (8) groups. The Court provided Notice (Docs. 42; 49; 58; 88) to Plaintiff regarding these eight Motions to Dismiss by the Defendants and instructed Plaintiff that he had twenty-one days of the date of the Court's Notice to file his responses. Plaintiff filed belated Responses in Opposition (Docs. 80; 81; 83; 84; 96; 97), that only contain brief, conclusory statements.[1] Although Plaintiff's Responses in Oppositions are untimely, the Court will nevertheless consider them.

The Court shall first address Plaintiff's Motions for Leave to Amend Complaints and then turn to the eight (8) Motions to Dismiss filed by the Defendants.

## **DISCUSSION**

### I.    **Plaintiff's Motions for Leave to Amend Complaints**

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave,"[2] which "[t]he court should freely give … when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Unless a substantial reason exists to deny the motion, such as undue prejudice or delay, movant's bad faith or dilatory motive, repeated failure to cure deficiencies, or futility, the interests of justice require that leave to amend be granted.

---

[1] To illustrate, a Defendant points out in his Reply (Doc. 103) that each of Plaintiff's Responses in Opposition is "a just-over-one-page long Brief in Opposition" that cite to "no laws or evidence" and that Plaintiff's Amended Complaints show that he has not cured the "fatal" deficiencies. (Doc. 103, at 6).

[2] Following a plaintiff's right to amend once as a matter of course within 21 days of serving the complaint or within 21 days after the defendant's answer or pleadings in response is filed, whichever is earlier. Fed. R. Civ. P. 15(a)(1).

*Foman v. Davis*, 371 U.S. 178, 182 (1962). The grant or denial of an opportunity to amend a pleading is within the discretion of the district court. *Id.* Although liberal construction is given to the pleadings of *pro se* litigants, the Eleventh Circuit still requires *pro se* parties to conform to procedural rules. *Mitchell v. Thompson*, 564 F. App'x 452, 456 (11th Cir. 2014) (internal citation omitted). Here, upon review of Plaintiff's operative Complaint (Doc. 20) and Amended Complaints (Docs. 59; 77), the Court agrees with Defendants and finds that Plaintiff's Complaints are improper shotgun pleadings.

To begin, Federal Rule of Civil Procedure 8 sets forth the general rules of pleading. Rule 8 instructs pleaders to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The point of Rule 8 is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Harrison v. Benchmark Elec. Huntsville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010) (internal quotation marks omitted). In addition, Federal Rule of Civil Procedure 10 sets forth the form of pleadings and requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that "each claim founded on a separate transaction or occurrence" must be stated in a "separate count or defense" if doing so would promote clarity. Fed. R. Civ. P. 10(b). A complaint that violates either Rule 8(a)(2) or Rule 10(b) or both are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). A shotgun pleading is a pleading drafted in such a way that is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *E.g.*, *Peavey v. Black*, 476 F. App'x 697, 699 (11th Cir. 2012). The Eleventh Circuit has frequently condemned shotgun pleadings. *Jackson v. Bank of*

*Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018) (stating shotgun pleadings are unintelligible documents that take "untold hours" of the district court and that tolerating shotgun pleadings "constitutes toleration of obstruction of justice," which is why the Eleventh Circuit has "condemned shotgun pleadings time and again," and a district court retains "authority to dismiss a shotgun pleading on that basis alone"); *Weiland*, 792 F.3d at 1320; *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997). This is because shotgun pleadings "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court, and the court's parajudicial personnel and resources." *Cramer*, 117 F.3d at 1263; *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (internal citations and quotations omitted) (stating that shotgun pleadings "wreak havoc on the judicial system" because they "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently").

The Eleventh Circuit has also stated that shotgun pleadings come in at least four different forms: (1) a pleading "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) a pleading "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a pleading failing to "separate[e] into a different count each cause of action or claim for relief" and; (4) a pleading asserting "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–23. When a complaint fits one of these descriptions, the district court should

dismiss it on the basis that it is a shotgun pleading. *Jackson*, 898 F.3d at 1357. Where a district

court faces repeated shotgun pleadings even after the plaintiff has been given chances to

replead, the court may dismiss the case with prejudice. *Id.* at 1358.

Here, the Court agrees with Defendants and finds that Plaintiff's operative Complaint

(Doc. 20) and his proposed Amended Complaints (Docs. 59; 77) are improper shotgun

pleadings. Plaintiff's operative Complaint (Doc. 20) is fifty-four (54) pages long, with each

section containing long paragraphs that are difficult to comprehend and follow as it is

unclear which claims and facts are directed at which Defendants. Moreover, Plaintiff's first

proposed Amended Complaint (Doc. 59) is eighty-nine (89) pages and contains the same

deficiencies as the operative Complaint (Doc. 20). Next, Plaintiff's second proposed

Amended Complaint (Doc. 77) is 306 pages long and suffers from the same deficiencies as

the operative Complaint and the prior proposed Amended Complaint (Doc. 59). None of

these pleadings are short or concise, and not addressable on merits. Upon review of

Plaintiff's Complaints, the Court finds that they are filled with scattered arguments and

"conclusory, vague, and immaterial facts that are not obviously connected to any particular

cause of action." *Weiland*, 792 F.3d at 1322; *Arrington v. Green*, 757 F. App'x 796, 798 (11th

Cir. 2018). Moreover, the Complaints contain over-abundance of extraneous details that

render them excessively long and difficult to comprehend.  Notably, when the Court

previously denied without prejudice Plaintiff's prior Motion to Amend the Complaint

(Doc. 2), the Court also noted that shotgun pleadings are generally unacceptable and that

Plaintiff will be given another opportunity to amend his Complaint if he remedies the

deficiencies. (Doc. 7). Yet, Plaintiff's operative or First Amended Complaint (Doc. 20),

which he filed notwithstanding the Court's notice and warning, as well as his proposed

Amended Complaints (Docs. 59; 77) still suffer from the same deficiencies, which demonstrate Plaintiff's lack of attempt to correct the defects that were previously identified by the Court. Thus, the Court agrees with Defendants and finds that Plaintiff's Complaint and his proposed Amended Complaints are subject to dismissal as impermissible shotgun pleadings. Therefore, Plaintiffs' Motions for Leave to Amend Complaint (Docs. 59; 77) are **DENIED**.

## II.    **Defendants' Motions to Dismiss**

To date, sixty-five (65) individuals and entities have been named as Defendants in the above-styled case. These Defendants have been divided into eight (8) groups, and each group filed a motion to dismiss. (Docs. 31; 32; 40; 45; 53; 57; 86; 87). Two groups of Defendants have been assembled into one group[3] and thus are the following groups of Defendants:

1. the Oklahoma Defendants (DNA Solutions, Inc; James Anstead; Brandi Bacon; and Thomas Kupiec) (Doc. 31);

2. the Sheriff's Departments Defendants (Sheriff Carlton Powell of Thomas County, Georgia; the Thomas County Sheriff's Department; Sheriff W.E. Bozeman of Mitchell County, Georgia; the Mitchell County Sheriff's Department; the Thomas County Superior Courthouse; Sheriff Howell; the Colquitt County Sheriff's Department; the Colquitt County; Sheriff Young; the Grady County Sheriff's Department; Grady County) (Docs. 32-1; 57-1);

3. the State of Georgia Defendants (the State of Georgia; Office of the Governor of the State of Georgia; Office of the Secretary of State of Georgia; Office of the Inspector General of Georgia; Office of the Attorney General of Georgia; Georgia Department of Human Services; Georgia Division of Family and

---

[3] As noted above, there are eight (8) groups of Defendants. But Docket Entry 32 was filed by the Sheriff of Thomas County and the Sheriff of Mitchell County, and Docket Entry 57 was filed by the Sheriff of Colquitt County and the Sheriff of Grady County. Because these two motions to dismiss (Docs. 32; 57) are submitted by the same attorney, involve similar facts, and Defendants are sheriffs, the Court considered the Sheriff Defendants as one (1) group for purposes of ruling on their motions to dismiss.

Children Services; Sonny Perdue; Samuel Olens; Nathan Deal; Brian Kemp; Deborah Wallace; Christopher Carr; Ashleigh Headrick; Jason Knowles; Kathryn Reeder; Karen Hampton; Robyn Crittenden; Tangular Gray; John Hurst; Sarah Hurst; Evelyn Jackson; Janet Jones; Margaret Chupara; Georgia Superior Court Judge James Hardy; Georgia Superior Court Judge A. Wallace Cato, and South Georgia District Attorney Joseph Mulholland) (Doc. 40-1);

4. Defendant Kirbo (Doc. 45);

5. the Lab Corp Defendants (Laboratory Corporation of America Holdings; Adam Schechter; Pamela Dann; Dr. Melanie Trapani; and Sabrina Williams) (Doc. 53-1);

6. Defendant Milligan (Doc. 86); and

7. the Tru Care Labs Defendants (Tru Care Labs, Inc., its president Carrie Norris, and its employee Heather Harnage) (Doc. 87).

Defendants argue the following. All Defendants argue that Plaintiff fails to state a claim under Section 1983. The Lab Corp Defendant and Defendant Milligan argue that Plaintiff fails to state a claim for intentional infliction of emotional distress. The Oklahoma Defendants, the Lab Corp Defendants, Defendant Milligan, and the Tru Care Labs Defendants argue that Plaintiff fails to state a claim for conspiracy and fraud. The Oklahoma Defendants, Defendant Kirbo, and the Lab Corp Defendants argue that Plaintiff failed to perfect service on them.  The Oklahoma Defendants, the State of Georgia Defendants, Defendant Kirbo, the Lab Corp Defendants, Defendant Milligan, and the Tru Care Labs Defendants also argue Plaintiff's operative Complaint (Doc. 20) as well as his proposed amended Complaints constitute improper shotgun pleading. Lastly, Defendant Milligan and the Tru Care Labs Defendants argue that Plaintiff failed to establish personal jurisdiction over them.

## LEGAL STANDARD

To begin, Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not just merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A dismissal for failure to state a claim is proper "if the factual allegations are not enough to raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (internal citation and quotation marks omitted). In conducting its analysis, the Court must accept the allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Additionally, in evaluating the sufficiency of a plaintiff's pleadings, the Court must "make reasonable inferences in Plaintiff's favor" but is not "required to draw Plaintiff's inference." *Aldana v. Del Monte Fresh Prod., N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). The Supreme Court has instructed that although a court "must accept as true all of the allegations contained in a complaint" while assessing a motion to dismiss, this principle is not applicable to legal conclusions, which must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555.

True, a *pro se* party is afforded leniency that is not granted to those who are represented by counsel. *Poursaied v. Rsrv. at Rsch. Park, LLC.*, 379 F. Supp. 3d 1182, 1186 (11th Cir. 2019). But such leniency does not give a court license to serve as *de facto* counsel for a *pro se* party or to rewrite an otherwise deficient pleading by a *pro se* litigant to sustain an action. *Id.* (internal citations omitted). Generally, courts treat factual allegations as true, but

courts do not treat conclusory assertions or recitation of a cause of action's elements as true. *Id.* at 1187 (internal citation omitted). "A *pro se* litigant 'is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure.'" *Id.* (internal citations omitted).

Here, upon review Plaintiffs' operative Complaint (Doc. 20), his proposed Amended Complaints (Docs. 59; 77), Defendants' Motions to Dismiss (Docs. 31; 32; 40; 45; 53; 57; 86; 87), and Plaintiff's Replies (Docs. 80; 81; 83; 84; 96; 97), and for the reasons discussed below, the Court finds that Defendants' Motions to Dismiss must be **GRANTED**.

## SUMMARY OF FACTS FROM PLAINTIFF'S COMPLAINT

As best as Defendants and the Court can parse out and determine Plaintiff's allegations, the following are facts alleged in the Complaint against the Defendants.

On August 15, 2005, when Plaintiff was at B&J Peanut Gin, two Thomas County deputies allegedly committed a number of acts against Plaintiff, such as unlawful detention of Plaintiff, assault of Plaintiff, and "forceful[]" seizure of Plaintiff's DNA. (Doc. 20, at 17). A few days later, on August 30, 2005, two other Thomas County Sheriff deputies "shot over 200 rounds [of bullets]" around Plaintiff's body when Plaintiff was at B&J Peanut Gin, and then "confiscated" Plaintiff's clothes. (*Id.* at 18–19).

On November 12, 2005, when Plaintiff was at B&J Peanut Gin, a Thomas County deputy allegedly shot Plaintiff and Sheriff Powell allegedly instructed his deputies to "shoot and kill Plaintiff." (*Id.* at 21).

Then, on August 26, 2010, Sheriff Young falsely arrested Plaintiff, entered into an agreement to rape Plaintiff, stripped Plaintiff, masturbated in front of Plaintiff, and raped Plaintiff. (*Id.* at 23). Grady County then made Plaintiff do "8 months of jail time for a crime

that another person already admitted to and was sentenced for" and permitted its "probation officers to extort the Plaintiff." (*Id.* at 25).

Then, on April 20, 2011, two Colquitt County Sheriff's deputies told Plaintiff that "the State of Georgia [told] them to beat [Plaintiff] up." (*Id.* at 25). They also allegedly "pulled the Plaintiff's pants down" and "raped" Plaintiff. (*Id.*) Plaintiff also alleges that Sheriff Howell also assaulted Plaintiff when he was handcuffed, performed oral sex on Plaintiff, and then raped Plaintiff. (*Id.* at 25).

On June 13, 2011, Plaintiff contends that he was at "the courthouse parking lot for child support court" when the Thomas County Sheriff's deputy started "beat[ing]" Plaintiff "badly." (*Id.* at 27). Plaintiff contends that he "attempted to run across the street and the deputy shot him several times." (*Id.*) Then, Sheriff Powell arrived and allegedly said that he "commanded the malicious activity." (*Id.*)  That same day, Defendant Milligan allegedly "agreed to help" produce "a fake document" and "received 20K for helping in this agreement." (*Id.* at 29). Although it is unclear exactly what the purported fake document is, based on the reading of the Complaint and Motions to Dismiss, the Court assumes that Plaintiff is referring to what he calls a "fraudulent genetic test report." (Doc. 86-1, at 3 n.4). Plaintiff also alleges that Defendant Milligan "said that he finished producing the fraudulent document" and that the document is "fake," but that Plaintiff would not be able to recognize "the defects in the fake document." (Doc. 20, at 29). Plaintiff further alleges that Defendant Milligan purportedly said that it would be "hard to trace the records for fraud." (*Id.* at 30).

Then, Plaintiff alleges that on June 11, 2011—which is two (2) days before Defendant Milligan allegedly agreed to produce "a fake document"—Orchid Cellmark allegedly

"produced a fraudulent DNA test report," which indicated a "probability of relationship . . . of 99.99%" and that Plaintiff "cannot be excluded as a father." (*Id.* at 34).

A few years later, on June 8, 2016, Sheriff Bozeman allegedly made an agreement with Governor Nathan Deal that Sheriff Bozeman would rape Plaintiff. (*Id.* at 36).

On March 11, 2017, Plaintiff alleges that he hired Defendant Kirbo to "organize legitimate genetic testing with the courts." (Doc. 20, at 37). Plaintiff then alleges that Defendant Kirbo colluded with other co-Defendants, including Governor Nathan Deal, Attorney General Christopher Carr, and other judges and law enforcement officers, via "multiple phone calls" and that these calls were an "agreement between a state actor and a private party." (*Id.*) Plaintiff alleges that Defendant Kirbo accepted bribes from his co-Defendants to prolong his federal case. (*Id.*) Plaintiff also alleges that Defendant Kirbo "setup [sic] the Keystone Foods incident," which allegedly occurred on August 8, 2017, by informing other co-Defendants where Plaintiff worked. (*Id.* at 37, 41). Plaintiff also alleges that Defendant Kirbo refused to represent Plaintiff in an apparent Workers' Compensation claim against Beadles Lumber Company and another lawsuit against J and R Baker Farms and that Defendant Kirbo's refusal to represent him amounted to a conspiracy. (*Id.* at 37).

On August 8, 2017, Sheriff Bozeman allegedly punched Plaintiff. (Doc. 20, at 41–42).

On December 15, 2020, Plaintiff alleges that he had an appointment for a DNA test at Labcorp and that Labcorp allegedly "deceived" Plaintiff with "fraudulent documents." (*Id.* at 45). Plaintiff further alleges that once Labcorp "administered the collection of Plaintiff's DNA," Labcorp allegedly disposed of Plaintiff's DNA sample. (*Id.*). Plaintiff alleges that Judge Hardy, Judge Cato, and Labcorp were involved in this "paternity fraud" and that Judge Hardy allegedly contacted Labcorp to "fabricate a document." (Doc. 20, at 30–31).

Labcorp allegedly accepted Judge Hardy's request and told him that "this illegitimate operation . . . was easy to get the job done." (*Id.* at 30). Plaintiff alleges that based on a purportedly false result, Judge Hardy ordered Plaintiff to pay child support. (Doc. 20, at 26, 29, 31, 32). Then, Plaintiff alleges that Judge Cato raped Plaintiff and that Judge Cato is allegedly "at fault" for "presiding over Plaintiff's probation" matters. (Doc. 20, at 23).

Subsequently, on March 19, 2021, Plaintiff had another DNA test at Tru Care Labs located in Tallahassee, Florida. (*Id.* at 47). Tru Care Labs administered the DNA test of Plaintiff and allegedly used Plaintiff's DNA sample "illegally" to participate in a paternity fraud against Plaintiff. (*Id.* at 17–18, 47). Plaintiff alleges that Tru Care Labs "manufactured fraudulent documents for paternity fraud" against him. (*Id.* at 18). He further alleges that two "fraudulent genetic test reports" were produced by Tru Care Labs and other Defendants. (*Id.* at 44). Plaintiff alleges that Heather Harnage, an employee of the Tru Care Labs, Inc., administered the test on Plaintiff, and Heather Harnage allegedly asked other Defendants to participate in this fraud. (*Id.* at 47). Plaintiff also alleges that the genetic reports that contain the Tru Care Labs trademark are part of the paternity fraud against Plaintiff. (*Id.*)

On March 25, 2021, Plaintiff alleges an "inappropriate commitment" occurred at DNA Solutions in Oklahoma by allegedly producing a "fraudulent DNA test report," which indicated Plaintiff was the biological father of a minor whom Plaintiff refers to as "Z.F." (*Id.* at 48).  Plaintiff alleges that Defendants worked together "to produce the fraudulent document." (*Id.*) Plaintiff also alleges that he was "kept out of work for six to eight months" because he was waiting on the genetic test, which caused him "loss of wages." (*Id.* at 44).

Based on his Complaint, the crux of Plaintiff's allegations appears to be that over sixty (60) Defendants worked together over decades to falsify Plaintiff's paternity records,

which indicate that Plaintiff is the biological father of a minor named "Z.F." (*See generally* Doc. 20).

Plaintiff brings Section 1983 against all seven groups of Defendants; intentional infliction of emotional distress (IIED) against the Lab Corp Defendants and Defendant Milligan; conspiracy and fraud against the Oklahoma Defendant, the Lab Corp Defendant, Defendant Milligan, and the Tru Care Labs Defendants, along with other claims which the Court will also discuss below. Defendants argue that Plaintiff's Complaint must be dismissed for various reasons including, but not limited to, failure to state a claim for Section 1983, conspiracy, IIED fraud, as well as improper service, shotgun pleading, and lack of personal jurisdiction.

## A.  Shotgun Pleading

Defendants move for a dismissal of the Complaint for failure to state a claim, arguing that Plaintiff's Complaint is "rife with statements which are nothing more than conclusory allegations." (Doc. 31, at 5). They contend that Plaintiff's Complaint is "implausible on its face" because Plaintiff alleges that Defendants were part of a conspiracy to have Plaintiff pay child support of a minor child for several decades. (*Id.* at 7). Defendants also argue that Plaintiff's Complaint (Doc. 20) is implausible on its face because it is based on the same "fanciful, fantastic, and delusional" allegations as his initial Complaint (Doc. 1), which involves conspiracies and actions that include multiple Georgia judges, past and present governors of Georgia, law enforcement officers, and lawyers all because of Plaintiff's child support obligation. *See Barnes v. Fed. Commc'n Comm'n*, 824 F. App'x 745, 750 (11th Cir. 2020) (affirming district court's dismissal of plaintiff's complaint with prejudice because plaintiff's

complaints were based on the same set of "fanciful, fantastic, and delusion" allegations and a lesser sanction, such as a dismissal without prejudice, would not have sufficed).

Plaintiff filed brief Replies, stating that his Complaint "has no defiencies [sic]" and that his Complaint "meets the 'Twombly/Iqbal standards" and is "no burden to any defendant." (Docs. 80, 81, 83, 84, 92, 96, 97, 103).

For reasons stated and the applicable law discussed *supra* in Section I, the Court finds Plaintiff's operative Complaint (Doc. 20) is an improper shotgun pleading. The liberal construction that applies to *pro se* pleadings does not mean having to establish a cause of action when the Court finds that the allegations in a complaint are delusional or "clearly baseless" and if a plaintiff alleges violation of legal interest that does not exist. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). These delusional or frivolous allegations in Plaintiff's Complaint alone can constitute sufficient grounds for the Court to dismiss Plaintiff's Complaint as frivolous. *Williams, Scott & Assocs. LLC v. Sally Yates*, 842 F. App'x 539, 540 (11th Cir. 2021) (per curium). A district court has the "inherent authority to control its docket and ensure the prompt resolution of lawsuits," which includes the ability to dismiss a complaint on shotgun pleading grounds. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (internal citation omitted). In sum, the Court agrees with Defendants that Plaintiff's Complaint should be dismissed on shotgun pleading grounds. However, the Court shall also address the merits of the Complaint, or lack thereof, as well as Defendants' arguments in their Motions to Dismiss.

**B. <u>Plaintiff Fails to State a Claim for Section 1983 Against All Seven Defendants</u>**

All Defendants contend that Plaintiff fails to state a claim for Section 1983 and that his claims of Section 1983 are also barred by the applicable statute of limitations.

Generally, a claim upon which relief may be granted under Section 1983 must embody at least two elements. First, Plaintiff must show that he has been deprived of a right "secured by the Constitution and the laws" of the United States. Second, Plaintiff must show that the Defendants deprived him of this right by acting "under color of any statute" of the State of Georgia. *Flagg Bros., Inc, v. Brooks*, 436 U.S. 149, 155 (1978). Essentially, Section 1983 is designed to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

Here, the Oklahoma Defendants (Doc. 31), the Labcorp Defendants (Doc. 53-1), Defendant Kirbo (Doc. 45), and the Tru Care Labs Defendants (Doc. 87) contend that Plaintiff cannot sustain a Section 1983 claim against them because they are not government actors. They correctly argue that Plaintiff's allegations fail to explain or, support with sufficient facts, as to how and why they qualify as a state actor. Additionally, the Oklahoma Defendants and the Labcorp Defendants also contend that the nature of the right claimed by Plaintiff is not cognizable in federal courts since Plaintiff's allegation is based on paying child support in Georgia and there is no federally recognized right for genetic DNA testing to determine whether Plaintiff is the biological father of a minor in a non-criminal proceeding. (Doc. 31, at 11–12) (citing *Van Poyck v. McCollum*, 646 F.3d 865 (11th Cir. 2011)); (Doc. 53-1, at 14); (Doc. 20, at 50, 54).

In his Replies (Docs. 80; 96; 97), Plaintiff merely and briefly argues that the Oklahoma Defendants, the Labcorp Defendants, Defendant Kirbo, and the Tru Care Labs Defendants "have listed unrealistic defenses" and that his complaint "meets the Twombly/Iqbal standards."

The Eleventh Circuit has explained that although the Supreme Court has extended protection under the Due Process Clause to a number of rights not explicitly referenced in the Constitution's text, it has nevertheless cautioned against the "open-ended judicial expansion of other unenumerated rights." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). "Courts have been notably reluctant to expand substantive due process doctrine to encompass state torts." *Id.* "Rights conferred by the state tort law, and adequately protected by that law, remain largely outside the scope of substantive due process jurisprudence." *Id.* (internal citations omitted). Substantive due process doctrine is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States" and does not apply to torts under state law unless it affects the individual rights that are guaranteed, explicitly or implicitly, by the Constitution itself. *Id.* (internal citations omitted).

Here, the Court finds that Plaintiff's alleged claims of state torts do not warrant substantive due process protection and that Defendants correctly argue that there is no federally recognized right for a DNA testing to determine whether Plaintiff is the biological father of a minor in a non-criminal proceeding. Additionally, the Court finds that Plaintiff fails to allege or show how these Defendants acted under color of state law in their brief interactions with Plaintiff.  To do so, a plaintiff is required to allege that the conduct complained of (i) was committed by a person acting under color of state law and (ii) deprived the complainant of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *E.g.*, *Willis v. Univ. Health Serv.*, 993 F.2d 837, 840 (11th Cir. 1993). But here, Plaintiff fails to allege which of his constitutional rights were purportedly violated when he voluntarily showed up at the Tru Care Lab for a paternity testing.

Next, the Sheriff's Department Defendants (Docs. 32-1; 57-1), the State of Georgia Defendants (Doc. 40), Defendant Kirbo (Doc. 45), and Defendant Milligan (Doc. 86) argue that Plaintiff's Section 1983 claims are barred by Georgia's statute of limitations. They also contend that the Sheriff's Departments and the Superior Courthouse are not entities capable of being sued under Georgia law.

In response, Plaintiff argues that Defendants' Motions to Dismiss have "no defense," have "the intention of procrastinating or prolonging discovery," and are "illusional [sic] about conceding with justice" and that Plaintiff "clearly states 42 U.S.C. § 1983" with "the 2 elements needed to prove beyond a reasonable doubt." (Docs. 81; 83; 84; 96).

Generally, § 1983 has "no statute of limitations of its own, and instead is governed in each case by the forum state's general personal injury statute of limitations." *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003). Georgia's statute of limitations for personal injury and hence Section 1983 claims is two (2) years. *Id.* The accrual date of a Section 1983 cause of action is a question of federal law, and the point of accrual depends on the plaintiff's injury and once the plaintiff has a complete and present cause of action, such that the plaintiff can file suit and obtain relief. *Foudy v. Indian River Cnty. Sheriff's Off.*, 845 F.3d 1117, 1123 (11th Cir. 2017). An action accrues when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996). Section 1983 cause of action only accrues once the plaintiff knows or should know (1) that he suffered an injury that forms the basis of his action and (2) the identity of the person or entity that inflicted the injury. *Id.*

Here, the Sheriff's Department Defendants contend that regardless of which iteration of the accrual date is applied, the claims asserted against the Sheriff's Department

Defendants have accrued more than two years before the lawsuit was filed. (Doc. 32-1, at 6). For instance, the injuries alleged against the Sheriff's Department Defendants occurred on August 15, 2005, August 30, 2005, August 7, 2008, August 26, 2010, April 20, 2011, June 13, 2011, June 8, 2016, and August 8, 2017. (Doc. 20, at 8–14, 17–19, 21, 25–28, 36, 41). The Court agrees with the Sheriff's Department Defendants and finds that the allegations in Plaintiff's Complaint (Doc. 20) indicate that Plaintiff knew or should have known that he suffered an injury when those alleged events occurred, and that Plaintiff knew who caused the injury at the time those events occurred. (Doc. 32-1, at 6). Thus, the Court finds that Plaintiff fails to state a claim upon which relief can be granted as to his Section 1983 claims because his alleged injuries against the Sheriff's Department Defendants are barred by Georgia's two-year statute of limitations. Similarly, the Court finds Plaintiff's Section 1983 claims against the State of Georgia Defendants, Defendant Kirbo, and Defendant Milligan are also time-barred consistent with Georgia law. (Doc. 40-1, at 6–7). Plaintiff alleges that the purported conspiracy by the State of Georgia Defendants began in 2005. (Doc. 20, at 17). Then, upon review of Plaintiff's Complaint, the Court finds that Plaintiff knew of, or was aware of, the purported conspiracy by the State of Georgia Defendants and Defendant Kirbo in June of 2011. (*Id.* at 20, 35); (Doc. 40-1, at 7). Yet, Plaintiff did not bring suit until October of 2022, which is more than two years from the time his causes of action accrued. Thus, the Court finds that these § 1983 claims are also time barred. (*Id.*)

### C. **Plaintiff Fails to State Claims for Conspiracy, Fraud, and IIED Against the Labcorp Defendants, Defendant Milligan, the Oklahoma Defendants, and the Tru Care Labs Defendants.**

Under Georgia law, a plaintiff has a "stringent" burden to prevail in a cause of action for IIED. *Thompson-El v. Bank of Am., N.A.,*759 S.E.2d 49, 52 (Ga. Ct. App. 2014). To

prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Id.* Moreover, the defendant's conduct must be so extreme in degree that it goes beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *Id.* Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for IIED is a question of law.

Next, under Georgia law, fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff. *Elliott v. Savannah Int'l Motors, Inc.*, 861 S.E.2d 137, 141 (Ga. Ct. App. 2021). Additionally, Federal Rule of Civil Procedure 9(b) requires a heightened pleading standard when a complaint alleges fraud, which means the complaint must state with particularity the circumstances constituting fraud. *United States ex rel. Clausen v. Lab Corp. of Am*, 290 F.3d 1301, 1310 (11th Cir. 2002) (internal citations omitted). Rule 9(b)'s heightened pleading requirement provides that complaints alleging fraud must be stated with particularity, which includes (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff; and (4) what the defendants gained by the alleged fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997) (citations omitted).

In Georgia, a conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. *Id.* To recover damages for a civil conspiracy claim, a plaintiff must show that two or more people, acting in concert,

engaged in conduct that constitutes a tort. *Id.* Absent the underlying tort, there can be no liability for civil conspiracy. *Id.* Therefore, the existence of civil conspiracy depends on the viability of another claim; thus, if that underlying claim fails, then a claim for civil conspiracy will fail. *McKesson Corp. v. Green*, 683 S.E.2d 336, 343 (Ga. Ct. App. 2009).

Here, as to the IIED claim, the Defendants argue that Plaintiff fails to meet the "outrageous" standard and failed to allege that Plaintiff suffered severe emotional distress. (Doc. 53-1, at 1, 20). Additionally, Defendant Milligan also contends that Plaintiff's IIED against him are time barred because Plaintiff's causes of action for IIED against him started to run in June of 2011.

Plaintiff briefly responds that the Labcorp Defendants and Defendant Milligan have "listed unrealistic defenses" with the "intention to procrastinate or prolong discovery." (Doc. 80; 96).

Upon review of the briefs and applicable law, the Court also finds that Plaintiff's IIED claims must be dismissed as baseless because, as also discussed *supra* in Section I and Section II.A, Plaintiff's shotgun pleading offers only conclusory statements that are "fanciful," "fantastic," and "delusional," that allege state judges, law enforcement officers, Georgia's past and present governors, and various organizations worked together to fabricate a test result which indicated that Plaintiff may be a biological father of a minor. *See Watson v. Broward Cnty. Sheriff's Off.*, 808 F. App'x 891, 894 (11th Cir. 2020) (citing *Denton v. Hernandez,* 504 U.S. 25, 32–33 (1992)). The Court also finds that Plaintiff's IIED claims against Defendant Milligan are also time barred. Under Georgia law, the statute of limitations is two (2) years for IIED and four (4) years for fraud claims. *Scott v. Rite Aid of Ga., Inc.*, 918 F. Supp. 2d 1292, 1304–05 (M.D. Ga. 2013); *Brooks v. Freeport Kaolin Co.*, 324

S.E.2d 170, 171 (Ga. 1985). Thus, the Court agrees with Defendant Milligan that the statute of limitations for Plaintiff's IIED claim against him expired in June of 2013. (Doc. 20, at 17–18); (Doc. 86-1, at 11).

Next, as to Plaintiff's claims of fraud and conspiracy, the Defendants argue the following. First, the Defendants argue that Plaintiff has cited to criminal fraud and conspiracy statutes, rather than civil; therefore, the Defendants argue that none of those criminal statutes cited by Plaintiff expressly grant any cause of action to private persons, who allege harm by a violation of the statute. (Doc. 31, at 8). Upon review and consideration, the Court agrees with the Defendants and finds that Plaintiff cannot proceed under the criminal statutes in this civil action. *See McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 723 (11th Cir. 2002) (internal citation omitted) (explaining that a private right of action under a federal statute should only be found where there is "clear evidence of Congress's intent to create a cause of action"). As the Defendants correctly argue, there is no evidence that Congress intended to create a private cause of action under the federal criminal statutes alleged by Plaintiff. *See Cohen v. Carmel*, No. 10-22244-CIV, 2010 WL 2991558, at *1 (S. D. Fla. July 27, 2010) ("Title 18, Sections 241 . . . of the United States Code are criminal statutes and do not give rise to a private cause of action") (internal citation omitted).

In addition, the Defendants also argue that Plaintiff fails to allege sufficient facts to satisfy the elements of fraud or facts that show he justifiably relied on any false promise or information. They also contend that Plaintiff's Complaint cannot satisfy the heightened pleading standard required by Federal Rule of Civil Procedure 9(b) because Plaintiff fails to allege the precise document at issue, and at best, only "hints" that it may be a "false" genetic "report" without precisely identifying the exact document. Fed. R. Civ. P. 9(b); (Doc. 20, at

45). The Defendants also contend that Plaintiff does not even attempt to plead the fourth element of fraud—what the Defendants have gained by the alleged fraud. (Doc. 52-1, at 18). The Defendants argue that all Plaintiff alleges is that a large group of people purportedly conspired against him for years to falsify a paternity test. (*Id.*) Because Plaintiff's fraud claim fails, the Defendants argue that his civil conspiracy claim must also fail.

Upon review of Plaintiff's Complaint, Defendants' arguments, and applicable law, the Court agrees with Defendants and finds that Plaintiff fails to provide sufficient facts to satisfy the elements of Georgia fraud and failed to satisfy Rule 9(b)'s heightened standard requirement. Further, the Court finds that Plaintiff's conspiracy claim must fail because his fraud claim fails. *McIntee v. Deramus*, 722 S.E.2d 377, 379 (Ga. Ct. App. 2012) (explaining that a claim of civil conspiracy under Georgia law itself "furnishes no cause of action" alone); *McKesson Corp.*, 683 S.E.2d at 343 ("The cause of action for civil conspiracy lies not in the conspiracy itself but in the underlying tort committed against the plaintiff and the resulting damage.")

In sum, the Court finds that Plaintiff failed to state a claim for IIED, fraud, and conspiracy and those claims must be dismissed.

### D.  Failure to Perfect Service

The Oklahoma Defendant, Defendant Kirbo, the Labcorp Defendants, and the Tru Care Labs Defendants contend that Plaintiff failed to perfect service on them in a time and manner authorized by law and by the Orders of this Court (Docs. 7; 10), which extended the time in which Plaintiff may serve them. (Docs. 31; 45; 53; 87). Specifically, the Defendants argue that Federal Rule of Civil Procedure 4 requires personal service of the summons and complaint by a person who is at least 18 years of age and who is not a party to the lawsuit.

Fed. R. Civ. P. 4(c)(2). Yet, they argue that it was Plaintiff, a party to this case, who filed the purported returns of service with the Court, which shows that Plaintiff served or attempted to serve the Defendants. The Defendants also contend that it does not appear that summons was served on every Defendant and that some Defendants were not served with the operative Complaint.

Plaintiff briefly responds that the Defendants have "listed unrealistic defenses in the Motion to Dismiss" and that they were "properly served with the Complaint." (Docs. 80; 81; 84).

The Court agrees with the Defendants and finds that Plaintiff failed to perfect serve on the Defendants as required by Federal Rule of Civil Procedure 4. For instance, Plaintiff's "proof of service" (Doc. 24-1) shows that he served the summons by signing his name where it says, "Server's signature," which indicates that Plaintiff served the Defendants himself. Additionally, the name of individual, to whom the summons was served, is left blank. (*Id.*) Moreover, Plaintiff's other "Proofs of Service" (Docs. 19-5; 21; 21-7; 22-9) also do not show that the Labcorp Defendants were timely served by July 11, 2023, which was the deadline that the Court extended for Plaintiff to properly serve all Defendants. (Docs. 10; 11). If anything, the proof of service only shows that it was Plaintiff who purportedly effectuated service and that only a summons, but no Complaint, was served.[4] (Doc. 53-1, at 11).

---

[4] Some Defendants, such as the Tru Care Defendants, also contend that they have not accepted service of Plaintiff's suit papers or otherwise waived any of the formal requirements for proper service of process. (Doc. 87, at 7).

Upon review of the docket, the relevant records therein, and the applicable law, the Court agrees with Defendants and finds that Plaintiff failed to effect service on the Defendants. Despite the Court's prior instructions to Plaintiff to properly serve his Complaint and summons to Defendants (Docs. 7; 10), Plaintiff has failed to properly serve the Oklahoma Defendants, the State of Georgia Defendants, Defendant Kirbo, and the Labcorp Defendants in a manner authorized by law. *See, e.g.*, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (district court's dismissal was proper when the plaintiff himself attempted to serve process through the mail). Therefore, the Court finds that Plaintiff's Complaint (Doc. 20) could also be dismissed on the grounds of improper service.

### E. <u>Lack of Personal Jurisdiction</u>

Defendant Milligan and the Labcorp Defendants argue that Plaintiff fails to establish personal jurisdiction over them because Plaintiff fails to allege facts that show that these Defendants had any contact with or has ever transacted, done, or solicited business in the state of Georgia. Docs. 86; 87).  Thus, Defendant Milligan and the Labcorp Defendants argue that Plaintiff fails to establish this Court's exercise of personal jurisdiction over them under Georgia's long-arm statute or under federal due process because Plaintiff cannot show that they had the requisite minimum contacts with Georgia. (Docs. 86; 87).

Plaintiff only responds that the Labcorp Defendants and Defendant Milligan have "listed unrealistic defenses" and that they "have the intention to procrastinate or prolong discovery." (Docs. 80; 96).

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff's complaint is subject to dismissal if there is a lack of personal jurisdiction over the defendant. A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant has the "burden of alleging in

the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). A federal court undertakes a two-step inquiry to determine whether personal jurisdiction exists. *Diamond Crystal*, 593 F.3d at 1257–58. The exercise of personal jurisdiction must be (1) appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment. *Id.* The Georgia long-arm statute provides, in relevant part, that a court of the state of Georgia may exercise personal jurisdiction over any nonresident as to a cause of action arising from transacting any business within the state of Georgia; committing a tortious act or omission within the State of Georgia, except as to a cause of action for defamation of character arising from the act; or committing a tortious injury in the state of Georgia caused by an act or omission outside of this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state. O.C.G.A. §§ 9-10-91(1)-(3). If a nonresident defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Madara*, 916 F.2d 1510.

Here, Plaintiff provides no evidence that Defendant Milligan and the Tru Care Labs Defendants are or have been a Georgia citizen or that they own a business that is registered in Georgia or have their principal place in Georgia. Defendant Milligan attached a Declaration (Doc. 86-2), wherein he states that he has "never resided in the State of Georgia" nor have ever had a "mailing address, post office box or telephone listing in the State of Georgia," and does not have personal bank accounts in Georgia and that he has

never worked in nor have traveled to the State of Georgia. (Doc. 86-2). The Tru Care Labs Defendants also argue that they are Florida residents and Plaintiff failed to provide sufficient facts to make out a *prima facie* case of jurisdiction under Georgia's long-arm statute. (Doc. 87). The Tru Care Labs Defendants have also attached their Declarations (Docs. 87-1; 87-2), which indicate that any interaction with Plaintiff only occurred in Florida when Plaintiff voluntarily scheduled an appointment with Tru Care Lab for a paternity testing.

Plaintiff briefly responds that Defendants "lack[s] sufficient defenses to the plaintiffs [sic] 1st Amended Complaint" and that he is "adamant on the Courts [sic] exercising supplemental jurisdiction over state law claims and federal prosecution." (Docs. 96; 97).

Upon review, the Court finds that Plaintiff has failed to allege in the complaint sufficient facts to make a *prima facie* case of jurisdiction. As explained above, a plaintiff who seeks the exercise of personal jurisdiction over a nonresident defendant has the "burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *Diamond Crystal Brands, Inc.*, 593 F.2d at 1257. The exercise of personal jurisdiction must be (1) appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment. *Id.* at 1257–58; O.C.G.A. §§ 9-10-91(1)-(3). And if a nonresident defendant challenges personal jurisdiction by submitting evidence in support of its position, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Madara*, 916 F.2d 1510. Here, the Court finds that Plaintiff has failed to allege sufficient facts to make a *prima facie* case of jurisdiction over Defendant Milligan and the Tru Care Labs Defendants and finds that the Georgia long-arm statute is not satisfied. Plaintiff has also failed to produce evidence of jurisdiction in response to Defendants' declarations.

Additionally, the Sheriff's Department Defendants also argue that Plaintiff's Section 1343 claim is subject to dismissal because Section 1343 is merely a jurisdictional statute that does not create an independent cause of action. 28 U.S.C. § 1343 ("The district courts shall have original jurisdiction of any civil action authorized by law. . ."); *Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 892 (11th Cir. 2007) (concluding that "28 U.S.C. § 1343 does not create a private right of action"). Based on the Sheriff's Department Defendants' arguments and the applicable law, the Court agrees with them and finds that Plaintiff's Section 1343 claim must be dismissed.

In sum, the Court finds that it lacks personal jurisdiction over them.

## F.  Other Arguments by Defendants

The following are other additional arguments made by the Defendants, which the Court shall quickly address.

### i.    The Sheriff's Department Defendants Argue the Sheriff's Departments and Courthouses Are Entities Not Capable of Being Sued Under Georgia Law.

The Sheriff's Department Defendants argue that the sheriff's department and courthouses are not entities capable of being sued under Georgia law.  (Docs. 40; 57).

Plaintiff only responds that the Motion to Dismiss "has no defense, has the intention of procrastinating or prolonging discovery" and is "illusional about conceding with justice." (Doc. 83).

Generally, the capacity to be sued is determined by the law of the state in which the district court is held. *Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006) (internal citation omitted).  Georgia courts have held that sheriff's departments and police departments are not usually considered legal entities subject to suit because the state of Georgia only

recognizes three classes as legal entities, which are: (1) natural persons; (2) an artificial person (a corporation); and (3) quasi-artificial persons as the law recognizes as being capable to sue. *Id.* And under Georgia law, sheriff's departments and police departments are not considered to be legal entities subject to suit. *Id.* (internal citation omitted).

Upon review of Parties' briefs and the applicable law, the Court finds that neither sheriff's departments nor superior courthouses in the instant case constitute a person or a corporation and are not entities capable of being sued. *See Clark v. Fitzgerald Water, Light & Bond Comm'n*, 663 S.E.2d 237, 239 (Ga. 2008); *see also* O.C.G.A. § 15-6-8.

### ii.    The State of Georgia Defendants Argue Claims Against Individual State Defendants in Their Official Capacities Are Barred by the Eleventh Amendment and the Doctrine of Sovereign Immunity.

The State of Georgia Defendant argues that Plaintiff's claims against individual state Defendants in their official capacity are barred by the Eleventh Amendment and the doctrine of sovereign immunity, and that no exception to sovereign immunity applies in the State of Georgia Defendant in this case. (Doc. 40. at 7–8). The State of Georgia Defendant also argues that Plaintiff's claims against Judges Hardy and Cato are barred by absolute judicial immunity. (*Id.* at 9).

Plaintiff responds that the State of Georgia Defendant "list[ed] incompatible defenses to Plaintiff's First Amended Complaint" and that the Defendant "has the intention to procrastinate discovery, are [sic] paranoid of attending discovery, and are [sic] delusional about conceding with justice." (Doc. 81, at 1).

The Eleventh Amendment bars suit in federal court against a state and its state officials. *Robinson v. Ga. Dep't. of Transp.*, 966 F.2d 637, 638 (11th Cir. 1992) Absent a waiver by the state or a valid congressional override, the Eleventh Amendment bars suit against a

state or one of its agencies, departments, or officials. *Robinson*, 966 F.2d at 640 (explaining that Congress did not intend to abrogate the states' Eleventh Amendment immunity in passing Section 1983) (internal citation omitted). Upon review of the relevant briefs and applicable law, the Court finds that the Eleventh Amendment bars Plaintiff's claims against the state of Georgia and its offices, agencies, divisions, departments, and individual state Defendant and the Eleventh Amendment immunity for the State of Georgia and its offices, agencies, divisions, departments, and individual state Defendants in this case have not been overridden by Congress.

Furthermore, although not clearly stated, even if Plaintiff is implicitly claiming that a state individual Defendant acted in an individual capacity, the Court finds such argument would also fail. Qualified immunity shields government officials executing discretionary responsibilities from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Courson v. McMillian*, 939 F.2d 1479, 1486 (11th Cir. 1991) (internal citation omitted). If a defense of qualified immunity is raised in a Rule 12(b)(6) motion seeking dismissal, the immunity should be granted if the complaint fails to allege a violation of a clearly established constitutional or statutory right. *Siegert v. Gilley*, 500 U.S. 226, 232–33 (1991). In order to sufficiently state a claim for relief under Section 1983 against defendants, acting in their individual capacity, a plaintiff must allege that an act or omission deprived him of his right, privilege, or immunity secured by the Constitution of the United States and that the act or omission was committed by a person acting under color of state law. *See Wideman v. Shallow Ford Cmty. Hosp. Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987). Here, upon review of Plaintiff's Complaint, and for reasons already discussed *supra*, the Court finds that Plaintiff

failed to sufficiently state a claim and his allegations regarding the State of Georgia

Defendants in their individual capacities are insufficient to establish a claim for relief, to the

extent Plaintiff implicitly alleges such a claim.

In addition, judges are entitled to "absolute judicial immunity from damages for acts

taken while they are acting in their judicial capacity" unless they acted in the "clear absence

of all jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (internal citation

omitted) (quotation marks omitted). This immunity applies even when the judge's acts are in

error, malicious, or were in excess of his or her jurisdiction. *Id.* Whether a judge's actions

were made while acting in his judicial capacity depends on whether (1) the act complained of

constituted a normal judicial function; (2) the events occurred in the judge's chambers or in

open court; (3) the controversy involved a case pending before the judge; and (4) the

confrontation arose immediately out of a visit to the judge in his judicial capacity. *Sibley v.

Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (internal citations omitted). The Eleventh

Circuit has explicitly rejected the use of § 1983 as a device for collateral review of state court

judgments. *Id.* Accordingly, when a § 1983 is involved, the inquiry is whether a judge's

decision or order is a judicial activity. *Id.* at 1070–71.

Here, as the Court discussed above, Plaintiff's Complaint contains various, motley

allegations that are difficult to parse out. To the degree that Plaintiff is making allegations

about Judges Hardy and Cato's orders, such as presiding over probation matters and

ordering Plaintiff to pay child support, (Doc. 20, at 23, 26, 29, 31, 32), the Court finds that

Judges Hardy and Cato are entitled to absolute judicial immunity for their judicial acts. *Sibley*,

437 F.3d at 1071; *Bolin*, 225 F.3d at 1239. *Caldwell v. Downs*, 789 F. App'x 183, 186 (11th Cir.

2019).  Here, Plaintiff has not alleged that Judges Hardy and Cato were acting outside their

judicial capacity regarding Plaintiff's matters of child custody and probation in bringing § 1983 claim against the Judges. Ultimately, the Court finds that Judges Hardy and Cato had absolute immunity for actions performed in their judicial capacity.

In sum, for the aforementioned reasons, Defendants' Motions to Dismiss are **GRANTED**. (Docs. 31; 32; 40; 45; 53; 57; 86; 87).

### III. <u>The Dismissal of Plaintiff's Complaint Shall be with PREJUDICE</u>.

The Court now turns to Defendants' requests to dismiss Plaintiff's Complaint with prejudice. (Docs. 53; 86). The Eleventh Circuit has explained that a dismissal with prejudice, whether on a motion or *sua sponte*, is an extreme sanction that may be properly imposed only when a party engages in a clear pattern of delay or willful contempt and the district court specifically finds that lesser sanctions would not suffice. *Betty K. Agencies, Ltd.* v. *M/V MONADA*, 432 F.3d 1333, 1338 (11th Cir. 2005).

Here, upon review of the Parties' briefs and the relevant record on the docket, the Court finds that dismissal of this case with prejudice is warranted. In the above-styled action, Plaintiff has filed a total of eight (8) Complaints thus far, and each of those Complaints are shotgun pleadings with lengthy paragraphs, containing scattered arguments. Moreover, the Court had previously dismissed without prejudice Plaintiff's prior Amended Complaint (Doc. 2), in part, because it was a shotgun pleading. The Eleventh Circuit has explained that where a plaintiff has received notice of pleading deficiencies and was given opportunities to replead, a court may dismiss the case with prejudice for improper shotgun pleading. *Jackson*, 898 F.3d at 1358. Yet, Plaintiff's operative Complaint (Doc. 20) and his proposed Amended Complaints (Docs. 59; 77) demonstrate to the Court that Plaintiff has not made a good faith attempt to remedy the deficiencies, despite having had many opportunities to do so. Both

operative Complaint (Doc. 20) and proposed Amended Complaints (Docs. 59; 77) violate several rules against shotgun pleading, as they are extensively lengthy and difficult to follow and for reasons stated above in more detail. Thus, the Court finds that it would serve no interest of justice or judicial economy trying to sift through the merits of Plaintiff's Complaint or proposed Amended Complaints. The Court has already expended significant judicial resources in reviewing the Complaints and ultimately concludes that allowing Plaintiff another opportunity to replead would be futile. Plaintiff was clearly noticed regarding the deficiencies of his pleadings but has repeatedly failed to properly address them, amounting to willful contempt. Accordingly, the Court finds that Plaintiff's Complaint must be **DISMISSED with prejudice**. Ultimately, the Court finds that a lesser sanction would not suffice in this case.

## CONCLUSION

For the aforementioned reasons, Plaintiff's Motions for Leave (Docs. 59; 77) are **DENIED**, Defendants' Motions to Dismiss (Docs. 31; 32; 40; 45; 53; 57; 86; 87) are **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. Accordingly, other pending Motions on the docket (Docs. 13; 66; 73) are **DISMISSED as moot**. The Clerk is **DIRECTED** to close this case.

**SO ORDERED**, this 13th day of February 2024.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**